

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**01/13/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| STEPHANIE G. SMITH | § | **CASE NO: 12-34955** |
| Debtor(s) | § | |
| | § | **CHAPTER  13** |
| | § | |
| U.S. BANK, N.A., AS TRUSTEE | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 13-03198** |
| | § | |
| STEPHANIE G. SMITH, *et al* | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

U.S. Bank and GMAC filed a motion to dismiss Green Tree and Bank of New York's counterclaims for failure to state a claim upon which relief may be granted.  (ECF No. 43).  The counterclaims for trespass to try title and note discharged by payment under the Texas UCC are dismissed.  Green Tree and Bank of New York have sufficiently stated a claim for negligence and a common law claim for note discharged by tender of payment.  Accordingly, the motion is granted in part, and denied in part.

### Facts

On August 26, 1999, Stephanie Smith, purchased real property and executed a promissory note ("Original Note") for $71,910.00 secured by a deed of trust ("Original Deed of Trust").  (ECF No. 18 at 5).  The first lien mortgage was recorded in the Harris County real property records on September 14, 1999. (*Id.*).  The Original Note and Original Deed of Trust were assigned to U.S. Bank. (*Id.*).  GMAC Mortgage, LLC is the current mortgage servicer.  The Original Deed of Trust has not been released.

On April 23, 2007, Smith executed a Home Equity Note ("Second Note") and Deed of Trust ("Second Deed of Trust") in an attempt to refinance her mortgage. (ECF No. 18 at 5). The Second Deed of Trust was recorded on April 30, 2007. A portion of the proceeds of the Second Note was designated to pay off and satisfy the Original Note and Deed of Trust.

The original lender on the Second Note was The CIT Group/Consumer Finance, Inc. The Second Note and Deed of Trust have been assigned to Bank of New York. Green Tree Servicing, LLC is the current servicer on the Second Note.

On March 12, 2007, Country Title LLC, the company closing the home equity loan, received a payoff statement for the Original Note. It reflected that the amount due as of March 12, 2007 was $71,504.66 with a per diem of $23.78. (ECF No. 42-1 at 1). The payoff statement contained the following relevant terms: (i) "Add a late charge of $38.61, if received after March 16th;" (ii) "If funds are sent via wire, please add a wire fee of $5.00;" (iii) "This quote is only valid up to 30 days after issue date or up to the PENDING COSTS G/T date is specified above"; and (iv) "Balances owed will change if a payment becomes due, is late, is paid, is reversed or if a disbursement for taxes or insurance is made on your behalf." (*Id*.).

The home equity loan closed on or about April 23, 2007 at Country Title. (ECF No. 42 at 3). On April 27, 2007, Country Title transferred $72,000.08 of the loan proceeds to Homecomings Financial, the prior mortgage servicer, in an attempt to pay off the Original Note. Homecomings rejected the payment and returned the funds. On two additional dates, July 16, 2007 and August 3, 2007, Country Title transferred funds to Homecomings. The funds were again returned on each these two occasions.

On April 3, 2007, Smith had made her monthly $1,312.95 mortgage payment on the Original Note. (ECF No. 42-1 at 6).

BONY and Green Tree contend that if Smith's April 3 payment is added to the amount that was sent by Country Title on April 27, 2007, then the amount sent by Country Title was sufficient to pay off the Original Note. (ECF No. 44 at 4).

GMAC and U.S. Bank do not dispute that (i) on April 27, 2007, Country Title transferred $72,000.08 to the credit account of Homecomings, (ii) that Smith made the April 3, 2007 mortgage payment, and (iii) Country Title made two additional attempts to transfer the funds to Homecomings.  However, U.S. Bank maintains that the funds were rightfully returned on all three occasions because (i) the funds were short of a full payoff and (ii) the wire transfer had the wrong account number.  (ECF No. 18 at 6-7).  None of the parties have identified which party has the loan proceeds that were set aside to pay off the Original Note.

On July 2, 2012, Smith filed a chapter 13 bankruptcy petition. (Case No. 12-34955, ECF No. 1).

## Procedural Background

U.S. Bank and GMAC filed a proof of claim asserting a first lien, purchase money mortgage on Smith's principal residence in the total secured amount of $116,471.73, including a pre-petition arrearage claim of $54,934.48.  (ECF No. 18 at 4).

BONY and Green Tree filed a proof of claim asserting a first lien home equity mortgage on Smith's principal residence in the total amount of $88,776.12, including a pre-petition arrearage of $5,917.01. (*Id.*).

Smith objected to U.S. Bank's proof of claim alleging that she refinanced the Original Note in 2007, with the Second Note.  She asserted that the Original Note was paid in full.  Smith did not object to Green Tree's proof of claim.  (ECF No. 18 at 4).  On Schedule A, the real property's value is listed at $111,646.00. (Case No. 12-34955, ECF No. 1 at 6).

On December 20, 2013, U.S. Bank filed its amended complaint to determine the validity and priority of its lien and objection to the claim and lien priority of Green Tree[1] and BONY. (ECF No. 18).

On July 10, 2014, BONY and Green Tree filed a counterclaim against U.S. Bank and GMAC. (ECF No. 42).  On July 31, 2014, U.S. Bank filed a motion to dismiss Green Tree's counterclaims. (ECF No. 43).  On August 20, 2014, Green Tree filed a response to the motion to dismiss.  (ECF No. 44).  Finally, on September 14, 2014, U.S. Bank filed a reply to Green Tree's response.  (ECF No. 46).

### Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for

---

[1] On December 18, 2013, a Notice of Transfer was filed verifying BONY's mortgage was service released from SLS to Green Tree.

entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

## Analysis

Green Tree asserts four substantive claims against U.S. Bank: (i) trespass to try title, (ii) note discharged by payment under the Texas UCC, (iii) common law claim for discharge by tender of payment, and (iv) negligence.  (ECF No. 42).  Green Tree also requests determination of the validity and priority of liens and declaratory judgment as forms of relief for its substantive claims.

In its motion to dismiss, U.S. Bank argues that (i) Green Tree has not plead sufficient facts to support each of its substantive claims and (ii) that each claim is barred by the applicable statute of limitations. (ECF No. 43).  The Court will first address whether Green Tree pleads sufficient facts to support each of its four claims.

## Green Tree's Counterclaims

 Green Tree's complaint fails to allege facts to support its claim for trespass to try title and "note discharged by payment" claim under the Texas UCC.  Green Tree has alleged sufficient facts to support its negligence claim and common law claim for discharge by *tender* of payment.

### (i)  Trespass to Try Title

Green Tree's trespass to try title claim fails because it does not allege that U.S. Bank unlawfully entered upon and dispossessed Green Tree of the property.

"A trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code. § 22.001(a).

Under Texas law, a trespass to try title claim is different from a suit to remove cloud or quiet title. *See Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App. 1977) (citing *Standard Oil Co. v. Marshall*, 265 F.2d 46 (5th Cir. 1959) ("A suit to remove cloud from title or suit to quiet title is different from an action in trespass to try title. A suit in trespass to try title is statutory and accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy.").

"Trespass to try title is an action to recover the possession of land unlawfully withheld from an owner who has a right of immediate possession." *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App. 1977).

"To state a claim for trespass to try title, the plaintiff must allege that the defendant unlawfully entered upon and dispossessed him of such premises, stating the date, and withholds from him the possession thereof." *Serna v. U.S. Bank, N.A.*, No. CIV.A. H-13-2559, 2014 WL 108732, at *2 (S.D. Tex. Jan. 9, 2014) (quoting *Martinez v. CitiMortgage, Inc.,* CIV.A. H–13–0727, 2013 WL 2322999, at *2 (S.D. Tex. May 28, 2013). In *Serna*, the District Court granted defendant's motion to dismiss a claim for trespass to try title where defendant never withheld possession of the property from plaintiff. *Id*; s*ee also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 767 (N.D. Tex. 2012) ("Since Plaintiff has failed to allege that she has lost possession of the property, her claim for trespass to try title fails and should be dismissed with prejudice.").

"A trespass-to-try title suit seeks title and possession of real property, and imposes unique and somewhat burdensome procedural requirements." *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 449 (Tex. App. 2006); *See also Roberson v. City of Austin,* 157 S.W.3d 130, 136–37 (Tex. App.- Austin 2005, pet. denied) (suits challenging validity of easement, a *non-*

possessory interest in real property, do not fall within trespass-to-try title statute and can be brought under UDJA).

Green Tree cites to *Martin v. Amerman* in support of its claim that it has sufficiently plead a claim for trespass to try title.  In *Martin*, the Texas Supreme Court held that "[t]o prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).  The *Martin* case involved a boundary dispute between the owners of adjoining properties.  The parties were asserting competing claims of legal ownership over the same thirty foot strip of land.

Green Tree has alleged that BONY has *title* to the property via a security instrument, which was recorded in 2007 and assigned to BONY.  Accordingly, Green Tree argues that alleging "equitable title" to the property via a deed of trust is sufficient to support a claim for trespass to try title.  (ECF No. 44 at 18); *see In re Nguyen*, No. 10-42499-DML13, 2011 WL 110903, at *3 (Bankr. N.D. Tex. Jan. 13, 2011) (*citing Flag–Redfern Oil Co. v. Humble Exploration Co., Inc.,* 744 S.W.2d 6, 8 (Tex.1987) ("Under Texas law, the execution of a deed of trust severs the legal and equitable estates. Legal title remains with the mortgagor while equitable title transfers to the mortgagee.").  The Court rejects this argument.

Texas follows the lien theory, not the title theory of mortgages.  *See Wicker v. Texas Bank of Garland, N.A.*, No. 05-94-01109-CV, 1995 WL 141152, at *3 (Tex. App. Mar. 31, 1995) (quoting *Taylor v. Brennan,* 621 S.W.2d 592, 593 (Tex. 1981) ("[I]n Texas, a mortgage or deed of trust is a lien on property and does not convey title to the property and, therefore, the mortgagee or trustee is not the owner of the property.").

Under these facts, asserting "equitable title" is insufficient to sustain a trespass to try title claim.  In the Texas cases where Courts have held that asserting "equitable title" is sufficient to sustain a trespass to try title claim, the plaintiff also asserts a right to *possession* of the property. In order for a mortgagee to sustain an action for trespass to try title, the mortgagee would have to allege that (i) it obtained a possessory right in the property by foreclosing on it and that (ii) it was unlawfully withheld from possession.  Indeed, the Supreme Court of Texas has held:

> In an action of trespass to try title the petition must state that the plaintiff was in possession of the land when the right of action accrued, or when ousted, or that he was entitled to such possession. Although he held the superior title as between himself and his vendee, Rucker stood in the relation of a mortgagee of the land out of possession, and not entitled to possession until default on part of the vendee, and a rescission by him of the contract, or a foreclosure.

*Stephens v. Motl*, 82 Tex. 81, 86, 18 S.W. 99, 100 (1891); *see also Hume v. Le Compte*, 142 S.W. 934, 935 (Tex. Civ. App. 1911) ("No doubt can arise, under the various decisions of this state, **that a mortgagee cannot sustain an action of trespass to try title based on his mortgage**, **because neither the title to the land nor the right of possession is in him**… **Appellant, being a mortgagee, had no possessory right to the land**, and without such right she had no foundation for a recovery of the land.") (emphasis added).

Each party is alleging that its lien is superior to the other's lien.  Green Tree must allege that U.S. Bank "unlawfully entered upon and dispossessed" it of the property.  This is because trespass to try title claims "involve the right to current possession of the property…" *Smith v. Killion*, No. 11-11-00083-CV, 2013 WL 1859336, at *4 (Tex. App. Apr. 30, 2013).  When the interest asserted is a non-possessory right, a claim for trespass to try title is not proper. *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App. 1977).

Neither U.S. Bank nor Green Tree ever held legal title to the real property in question. Nor did either party have a right to present possession of the property. Green Tree has not cited any authority to support its position that it need not allege that it had legal title to or possession of the property in order to sustain a claim for trespass to try title. Accordingly, neither U.S. Bank nor Green Tree can maintain a trespass to try title claim.[2]

**(ii) Note Discharged by Payment**

Green Tree cites to Texas U.C.C. § 3.602 and § 3.603 in alleging a claim for "note discharged by payment." (ECF No. 42 at 5). Green Tree cannot sustain a claim under either § 3.602 or § 3.603 because the parties' interests are not governed by the Texas Uniform Commercial Code. Green Tree has successfully plead a common law claim for discharge by *tender* of payment.

***Texas UCC does not apply to notes secured solely by real property***

Plaintiffs and Defendants each hold a note and deed of trust. Plaintiffs' deed of trust and Defendants' deed of trust places a lien on Smith's property. The comments to section three of the UCC make it clear that a note secured solely by real property is not governed by the UCC: "Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money." Tex. Bus. & Com. Code Ann. § 3.104, cmt. 2.

Indeed, several courts have rejected the argument that a mortgage note is a negotiable instrument governed by the Uniform Commercial Code. *See, e.g.*, *Horton v. M & T Bank*, No. 4:13-CV-525-A, 2013 WL 6172145, at *4 (N.D. Tex. Nov. 22, 2013) (holding that the UCC duty of good faith and fair dealing does not apply to a note secured by real property); *see also Clapp*

---

[2] U.S. Bank also asserts a claim for trespass to try title against Green Tree. (ECF No. 18 at 8). Because Green Tree has not filed a motion to dismiss, the Court does not dismiss U.S. Bank's trespass to try title action.

*v. Wells Fargo, Nat. Ass'n*, No. 4:14-CV-035-A, 2014 WL 1677805, at *3 (N.D. Tex. Apr. 28, 2014) (quoting *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App. 1998)) ("However, contrary to plaintiff's assertions, a mortgage note is not "within" the UCC: '[b]ecause the Deed of Trust places a lien on *real* property, it is not governed by the UCC.'").

However, a District Court in the Northern District of Texas engaged in a section 3.603 analysis with respect to promissory notes secured by real property. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, No. CIV.A. 2:05-CV-00314, 2006 WL 2828748, at *1 (N.D. Tex. Oct. 4, 2006). In *Terra XXI*, the Northern District of Texas explained the consequences for when a creditor wrongfully refuses *tender of payment* on a promissory note secured by real property[3]:

> Tender means the unconditional offer by a debtor or obligor to pay the amount due on a specific obligation. *Baucum v. Great Am. Ins. Co. of New York,* 370 S.W.2d 863, 866 (Tex. 1963). The obligor must offer to pay the debt, produce the funds, and relinquish them for a sufficient time and under such circumstances as to let the creditor take possession without special effort. *Id.* If the creditor refuses tender, the obligor has no liability for interest after the due date on the amount tendered. Tex. Bus. & Comm. Code Ann. § 3.603(c) (Vernon 2006). Yet a refusal does not extinguish the debtor's liability for the principal outstanding debt. *Guaranty Bank v. Thompson,* 632 S.W.2d 338, 340 (Tex. 1982).

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, No. CIV.A. 2:05-CV-00314, 2006 WL 2828748, at *4 (N.D. Tex. Oct. 4, 2006).

The District Court ultimately held that neither the principal nor the interest was extinguished because there was no "tender of payment" made by the debtor.  The decision, which was affirmed by the Fifth Circuit in an unpublished decision, assumes, without discussion, that a § 3.603 analysis should be applied to promissory notes secured by real property.  *Rabo Agrifinance Inc. v. Terra XXI Ltd.*, 257 F. App'x 732, 735 (5th Cir. 2007).  The Court rejects the

---

[3] The background section states that "Farm Credit Bank secured the notes by taking liens **on land** that the Defendant Terra XXI owned…"

theory, implicitly adopted in *Terra XXI,* that section 3.603 applies to notes secured solely by Texas real property.

### Common law claim for discharge by refusal of tender of payment

In its response, Green Tree refers to a common law theory (other than section 3.602) for why U.S. Bank's wrongful refusal of the payoff should discharge U.S. Bank's deed of trust. "Defendant has plead a viable claim that even if the Original Note may not be discharged by the tender of payment, Plaintiff's collateral benefit via the Original Deed of Trust is discharged." (ECF No. 44 at 27).  Green Tree asserts that "other applicable law has a different effect with respect to Plaintiff's corresponding lien on the Property.  Case law establishes that a deed of trust lien is extinguished or discharged when the mortgage debt is tendered." (ECF No. 44 at 27).

There are at least three cases that support Green Tree's common law claim for discharge by tender of payment.

Green Tree cites to two Texas Appellate Court decisions from the 1920s.  In *Lillienstern,* the plaintiff executed a farm chattel mortgage covering certain personal property to secure a note payable. *Lillienstern v. First Nat. Bank*, 288 S.W. 477, 478-79 (Tex. Civ. App. 1926).   The mortgagee wrongfully failed to accept tender of payment in the amount of the balance due on the mortgage debt.  Accordingly, the court held that "[t]he tender of the true amount of the balance due on the mortgage debt and refused by the mortgagee operated as a legal discharge of the mortgage lien." *Id.* at 478-79.

In *Sanders,* a different Texas Appellate Court noted that "it is further well settled that a tender and refusal of the amount due on a debt will release the surety, and that such a tender and refusal will discharge the lien of a mortgage." *Sanders v. Blakney*, 294 S.W. 238, 240 (Tex. Civ.

App. 1927) (loan secured by a ring).  However, neither of these cases involved a deed of trust in real property.

In *Harwood*, a bankruptcy court in the Eastern District of Texas*, in dicta,* applied the holding in *Lillienstern* to a deed of trust in real property: "A mortgage or deed of trust lien is extinguished or discharged under Texas law by: (1) payment of the underlying indebtedness, (2) **other tender of the amount of the mortgage debt**, or (3) by any other satisfaction of the note which the lien has been given to secure." *In re Harwood*, 404 B.R. 366, 401 (Bankr. E.D. Tex. 2009) (citing *Lillienstern v. First Nat. Bank,* 288 S.W. 477, 478–79 (Tex. Civ. App.-Texarkana 1926, no writ).   The bankruptcy court ultimately held that the deed of trust lien was not discharged because there was no evidence that payment was tendered to the mortgagee.  *In re Harwood*, 404 B.R. 366, 401 (Bankr. E.D. Tex. 2009).

*Lillienstern* and *Sanders* each concern personal property liens.  Each pre-dates the Texas legislature's adoption of the Uniform Commercial Code. When Texas adopted the UCC, the UCC replaced Texas common law with respect to the effect of a tender of payment on liens on personal property, but did not alter Texas common law as it applied to real property.  *See Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.–San Antonio 1998, no pet.) (analyzing common law duty of good faith after determining that Texas UCC did not apply).   Accordingly, the Court concludes that *Harwood* was correct when it stated Texas common law as it applied to real property.  Accordingly, Green Tree's common law discharge by tender of payment claim may discharge U.S. Bank's deed of trust lien.

U.S. Bank argues that this common law principal has been replaced by the Texas UCC § 3.603. (ECF No. 46 at 18).  However, as set forth above, the Texas UCC does not apply to mortgage notes.

Green Tree's counterclaim alleges facts sufficient to sustain a common law claim for discharge by tender of payment. Green Tree's claim is dismissed to the extent that it seeks relief under Texas UCC § 3.602 and § 3.603.

### *(iii)Negligence*

Texas common law negligence has three elements: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately resulting from that breach. *El Chico Corp. v. Poole,* 732 S.W. 2d 306, 311 (Tex. 1987).

Green Tree has successfully plead a claim for negligence. Whether a duty exists is a question of law for the court to determine from the facts surrounding the event in dispute. *Otis Eng'g Corp. v. Clark*, 668 S.W. 2d 307, 312 (Tex. 1983). Green Tree alleges that "U.S. Bank was guilty of negligence by reason of failure to use the degree of care that would have been used by an ordinarily reasonable and prudent person under the same or similar circumstances" by wrongfully returning the payoff amount on three separate occasions. (ECF No. 42 at 6).

Well settled Texas law imposes a duty on a lienholder to its debtor to prepare, execute, and deliver to the debtor a valid release of his lien upon tender of the amount due. *See Bayless v. Strahan*, 182 S.W.2d 262, 264 (Tex. Civ. App. 1944) (internal citations omitted) ("Since an early day our courts have consistently held that one who holds an apparent right in an estate in connection with an indebtedness may be required to surrender his right to the true owner upon discharge of the indebtedness and that it is the duty of a lienholder to prepare, execute, and deliver to the debtor a valid release of his lien upon tender of the amount due him."). The question is whether a lienholder owes a duty to a subsequent lienholder on the same property.

Green Tree cites to *City Bank* to support its claim that U.S. Bank owed a duty to Green Tree. *City Bank v. Compass Bank*, No. EP-10-CV-62-KC, 2010 WL 2680585, at *1 (W.D. Tex.

July 2, 2010).   In *City Bank*, the Western District of Texas rejected the defendant bank's

argument that it did not owe a duty of care to the plaintiff bank in connection with the debtor's

refinancing transaction.  (*Id*. at *2).

> Courts frequently cite Texas negligence law for the proposition that a bank owes
> no duty to someone who is not a customer and with whom the bank does not have
> a relationship.  This rule, however, is generally applied in cases where a plaintiff
> claims to have been defrauded, or otherwise victimized, by an account holder at a
> bank, and proceeds to claim against the bank under the theory that, had the bank
> more closely supervised all of its customer accounts, the bank could have
> surmised that a customer was operating a fraudulent scheme. **Where the
> potential victim's identity, the mode of harm, and the way to avoid that harm
> are all particularly known to the bank in advance, by contrast, Texas law
> may well impose a duty of care on the bank in connection with that victim.**

*City Bank v. Compass Bank*, No. EP-10-CV-62-KC, 2010 WL 2680585, at *3 (W.D. Tex. July 2,

2010) (internal citations omitted).

The Court in *City Bank* further explained why a duty of care is owed between lenders in

the "negligent execution of a refinancing transaction" scenario:

> State National Bank knew of the existing line of credit… knew that it was
> supposed to be paid off from the new line of credit before cash was advanced…
> knew or should have known that the most appropriate and secure way to retire the
> City Bank loan was a bank-to-bank payment, failed to use that method, and knew
> or should have known that SamCorp's having two liens of credit open and drawn
> down at the same time was dangerous to SamCorp and its creditors or
> stakeholders.

*City Bank v. Compass Bank*, No. EP-10-CV-62-KC, 2010 WL 2680585, at *3 (W.D. Tex. July 2,

2010).

Similar circumstances exist in this case.   In *City Bank*, the original lender sufficiently

plead a negligence claim against a subsequent lender who allegedly failed to apply the refinanced

funds to pay off the original loan.   In this case the original lender is alleged to have wrongfully

failed to accept the refinanced funds from the subsequent lender.   U.S. Bank interprets *City Bank*

to mean that Green tree had a duty to U.S. Bank, but not vice versa. (ECF No. 46 at 17) ("It was

Green Tree, not U.S. Bank, who had a duty to ensure U.S. Bank's loan was paid."). The Court rejects this argument.

The Payoff statement was sent by Country Title to Homecomings Financial. At that time, Homecomings was acting as the agent for U.S. Bank. Green Tree's injury was a foreseeable consequence of U.S. Bank's wrongful refusal of the payoff on the original mortgage.

Green Tree plead sufficient facts to support the element of breach. Green Tree alleges that (i) the payoff was sufficient to satisfy the true balance of the original mortgage when combined with Smith's April mortgage payment; (ii) Country Title made two subsequent attempts to pay off the full balance of the loan; and (iii) Homecomings wrongfully refused to accept the funds on all three occasions based on the mistaken belief that the funds were insufficient to pay off the balance.

Green Tree also successfully plead facts to support proximate causation. The two elements of proximate cause are foreseeability and cause in fact. *Clark v. Waggoner*, 452 S.W.2d 437, 439 (Tex. 1970). U.S. Bank only disputes the foreseeability element. "The foreseeability element of proximate cause is established by proof that the actor as a person of ordinary intelligence and prudence should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation." (*Id*. at 439-40). For the same reasons discussed above, Green Tree's injuries were a foreseeable result of U.S. Bank's wrongful refusal of the payoff.

Finally, U.S. Bank contends that Green Tree's negligence claim is barred by the economic loss rule. (ECF No. 43 at 10). The economic loss rule bars recovery for economic loss alone in certain tort actions. *See Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *19 (E.D. Tex. Oct. 2, 2012) (internal citations omitted). However,

the Texas Supreme Court has only applied the economic loss rule to cases involving (i) defective products claims and (ii) negligence claims that arise from a party's failure to perform a contractual duty. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011) ("Thus, we have applied the economic loss rule only in cases involving defective products or failure to perform a contract.").  Neither of these claims is present in this case.  Accordingly, the economic loss rule does not apply.

Green Tree does not allege that U.S. Bank breached a contractual duty.  Green Tree's negligence claim is based on the theory that U.S. Bank breached its duty of care by wrongfully refusing repayment on the original note.

BONY and Green Tree filed a proof of claim for its home equity mortgage in the total amount of $88,776.12.  U.S. Bank's assertion of a superior lien renders Green Tree's mortgage completely under secured and detrimentally affects Green Tree's ability to recover on its home equity note.  U.S. Bank filed a proof of claim for its first lien, purchase money mortgage on Smith's principal residence in the total secured amount of $116,471.73.  On her Schedule A, Smith values the real property at $111,646.00. (Case No. 12-34955, ECF No. 1 at 6). Accordingly, Green Tree has successfully plead damages that are not barred by the economic loss rule.

The Court now addresses U.S. Bank's statute of limitations defense to each of Green Tree's claims.

### U.S. Bank's Statute of Limitations Defenses

U.S. Bank argues that each of Green Tree's counterclaims is barred by the statute of limitations as a matter of law. (ECF No. 43 at 5).  These claims include the negligence claim and the common law claim for discharge by tender of payment.

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett,* 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6)… when [an] affirmative defense clearly appears on the face of the complaint.").

When adjudicating state law claims, federal courts apply federal procedural law and state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

State statutes of limitations and ancillary tolling rules are generally considered substantive law. *See In re Johnson*, No. 08-40492, 2009 WL 2982783, at *3 (Bankr. E.D. Tex. Sept. 11, 2009) (citing *Flour Eng's & Constr., Inc. v. Southern P. Transp.,* 753 F.2d 444 (5th Cir.1985) (interpreting statutory predecessor to Tex. Civ. Prac. Rem. Code § 16.069); *In re Professional Inv. Ins. Group, Inc.,* 232 B.R. 870 (Bankr. N.D. Tex. 1999) (discussing Texas limitations law and § 16.069 in the context of a claim objection).

Because the counterclaim savings clause under section 16.069 of the Texas Civil Practices and Remedies Code applies, neither of Green Tree's remaining claims is barred by the statute of limitations.

### (i) Negligence

A two year statute of limitations applies to negligence claims. Tex. Civ. Prac. & Rem. Code § 16.003.  Green Tree alleges that U.S. Bank committed negligent acts starting April 27, 2007 through August 3, 2007.  Because Green Tree first filed its negligence claim on July 10, 2014, U.S. Bank contends that it is barred by the statute of limitations. (ECF No. 43 at 6).

### *(ii) Discharge by Tender of Payment*

Unless an exception exists, the four year residual statute of limitations would bar Green Tree's common law claim. *See* Tex. Civ. Prac. & Rem. Code § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.") Tex. Civ. Prac. & Rem. Code § 16.051 (West).

### Exceptions to U.S. Bank's Statute of Limitations Defenses

The Court considers three exceptions to U.S. Bank's statute of limitations defenses: (i) the continuing tort doctrine, (ii) the discovery rule, and (iii) the counterclaim savings clause under section 16.069.

### (i) Continuing Tort Doctrine

Green Tree contends that U.S. Bank's continuing violation of Green Tree's rights tolls any applicable limitations period with respect to each of its remaining claims. (ECF No. 44 at 11).   The Texas Supreme Court has never addressed the continuing tort doctrine. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8, (Tex. 2005).  However, several courts of appeals have used the doctrine to toll limitations until the last act of intentional infliction occurs. (*Id.*) (citing *Toles v. Toles*, 45 S.W.3d 252, 262 (Tex. App. 2001);  *Newton v. Newton*, 895 S.W.2d 503 (Tex. App. 1995); *Twyman v. Twyman*, 790 S.W.2d 819 (Tex. App. 1990) (reversed on other grounds)).

A Texas Appellate Court described the continuing tort doctrine as follows:

Generally, a cause of action accrues when a wrongful act causes injury. Furthermore, limitations begin to run when the cause of action accrues. Yet, this is not true if the act involves a continuing tort. The latter arises when the wrongful conduct is repeated over a period of time.  In such a situation, each act creates a separate cause of action, and the cause does not accrue, for purposes of limitations, until the misconduct ends. Nonetheless, care must be taken to

distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortuous acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not.

*Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W.3d 281, 290 (Tex. App. 2005) (internal citations omitted).

The question is whether the wrongful acts claimed by Green Tree should be (i) limited to U.S. Bank's failure to accept the payment from the title company on three separate occasions in 2007; or (ii) the wrongful acts should be extended to U.S. Bank's continued assertion of a first priority lien in the amount of $116,471.73. Neither party cites to a Texas case that addresses this issue. Nor is the Court aware of any such case.

If the Court assumes all of Green Tree's factual allegations, U.S. Bank may be asserting a first priority deed of trust lien that was discharged under Texas law when U.S. Bank wrongfully refused tender of payment. U.S. Bank is asserting such claim to the detriment of the non-movant's interest in the real property. U.S. Bank's first lien has continued to accumulate interest and fees over the past seven years to the detriment of Green Tree's second lien position.

However, U.S. Bank's continued assertion of its first priority lien does not constitute a "continuing tort" under Texas law. *See Dickson Const., Inc. v. Fid. & Deposit Co. of Maryland*, 960 S.W.2d 845, 851 (Tex. App. 1997) ("Engaging in wrongful conduct that causes injury and then refusing to modify, reverse, or cease that conduct for some period of time thereafter does not constitute a continuing tort; rather, the statute of limitations begins to run when injury is first sustained.").

For example, in *Tectonic*, the plaintiff argued that an insurance company's refusal to pay a claim was a "continuing tort" by characterizing the wrongful conduct as an "unreasonable delay in payment rather than as a wrongful denial of coverage." *Tectonic Realty Inv. Co. v. CNA*

*Lloyd's of Texas Ins. Co.*, 812 S.W.2d 647, 654 (Tex. App. 1991).  The Texas Appellate Court rejected this argument and held that the tort was complete on the date that the insurance company unreasonably denied coverage.  *Tectonic Realty Inv. Co. v. CNA Lloyd's of Texas Ins. Co.*, 812 S.W.2d 647, 654 (Tex. App. 1991) ("We decline to characterize CNA's refusal to pay as a continuing tort.").  The Court cited the Texas Supreme Court in finding that "the fact that damages may accumulate after the point of unreasonable failure to pay does not toll limitations." *Tectonic Realty Inv. Co. v. CNA Lloyd's of Texas Ins. Co.*, 812 S.W.2d 647, 654 (Tex. App. 1991) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1990); s*ee also Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W.3d 281, 290 (Tex. App. 2005) (distinguishing between "continuing injury" from "continuing wrongful conduct") ("The individuals truly entitled to the royalties may have suffered a continuing injury each time the royalties were paid to another, but that injury arose because of one act, *i.e.* someone else copyrighting the song.").

The rationale underlying the *Tectonic* decision applies to this case.  The alleged wrongful acts occurred when U.S. Bank (or its predecessor in interest) wrongfully refused to accept tender of payment on three separate occasions in 2007.  The fact that damages to Green Tree may have accumulated as U.S. Bank's first priority lien grew to the detriment of Green Tree's second lien position does not prevent limitations from starting to run. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) ("The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run.").  Accordingly, the continuing tort doctrine is not applicable to its claims for trespass to try title and discharge by tender of payment.

For its negligence claim, Green Tree cites to *Waxler* in support of its position that "Plaintiff's resulting violation (*i.e.*, its continued failure and refusal to release its lien) and Defendants' continuing injury renders Plaintiff's conduct a continuing tort for which limitations has not yet began to run." (ECF No. 44 at 12) (citing *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277 (Tex. App. 2003). In *Waxler*, plaintiff filed a negligence claim against the defendant for issuing a negative credit report. In September of 1998, the defendant credit card company wrongfully coded a $605.12 check as a payment of only $105.12. As a result of this improper coding, the defendant issued a series of negative credit reports as to plaintiff's creditworthiness over the March to August of 1999 timeframe. On November 6, 2000, the plaintiff was denied credit from another lender because of the negative credit reports issued by defendant. Plaintiff filed the lawsuit on July 16, 2001.

Defendant argued that the two year statute of limitations began running in September of 1998, when defendant miscoded plaintiff's check, and therefore the limitations period expired in September of 2000. Plaintiff raised two arguments as to why her negligence claim was not barred by the statute of limitations: (i) her claim did not accrue until she was denied credit on November 6, 2000; and (ii) Defendant's issuing a series of negative credit reports constituted a "continuing tort." Without deciding whether defendant's conduct constituted a "continuing tort," the Texas Appellate Court held that plaintiff's cause of action accrued on the date of the denial of credit (November 6, 2000) because that "was the point when the legal injury was sustained." *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 285 (Tex. App. 2003). Accordingly, Green Tree's reliance on *Waxler* to support its "continuing tort" argument is misplaced.

However, *Waxler* does address the issue of determining when a negligence cause of action accrues for calculating when the statute of limitations begins to run:

> The first step in calculating when the statute of limitations begins to run against an action sounding in tort is to determine whether the act causing the damage itself constitutes a legal injury. If the act complained of is itself a legal injury to a plaintiff, the wrong is completed" and the cause of action accrues from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort. Conversely, if the act complained of is *not* itself unlawful and the plaintiff sues to recover damages subsequent to that act, the cause of action accrues when, and only when, the damages are sustained.

*Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 280 (Tex. App. 2003) (internal citations omitted).

Green Tree argues that they did not sustain an injury until U.S. Bank sought to enforce its alleged interest in the property to the exclusion of Green Tree. (ECF No. 44 at 12). Accordingly, Green Tree asserts that the statute of limitation began running on August 15, 2013. (ECF No. 1).

This is incorrect. The legal injury plead by Green Tree is that it has a second, rather than a first, lien against the property. Assuming all of Green Tree's factual allegations as true, this injury was sustained when U.S. Bank failed to release its lien after it wrongfully refused tender of payment in 2007. Green Tree's counterclaim establishes that it sustained an injury at the time the alleged wrongful act occurred. Accordingly, Green Tree's negligence claim accrued in August of 2007 (at the latest) and the statute of limitations expired in August 2009.

### (ii) The Discovery Rule

Green Tree also argues that the discovery rule provides an exception to limitations in this case. (ECF No. 44 at 11). "Texas's 'discovery rule' defers a cause of action's accrual until the plaintiff knows, or by the exercise of reasonable diligence should know, of the facts giving rise to the claim." *In re Soporex, Inc.*, 446 B.R. 750, 775 (Bankr. N.D. Tex. 2011) (citing *Barker v. Eckman,* 213 S.W.3d 306 (Tex. 2006).

The discovery rule applies when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 6

(Tex. 1996) (quoting *Computer Associates International, Inc. v. Altai, Inc.,* 918 S.W.2d 453 (Tex. 1996).  Because Green Tree fails to allege facts to satisfy the "inherently undiscoverable" requirement, the discovery rule does not apply.

"To be inherently undiscoverable, an injury need not be impossible to discover… An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

Texas courts have viewed the discovery rule as a "very limited" exception to statutes of limitations. *Childs v. Haussecker,* 974 S.W.2d 31, 36 (Tex. 1998).  The Texas Supreme Court only applies the discovery rule for cases where the plaintiff would not have been able to discover the injury even after reasonable due diligence. *See, e.g.*, *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (lawyer's error could not be discovered by client who was ignorant of the law); *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976) (false credit report could not be discovered until credit denied); *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 580 (Tex. 1963) (disinterested directors could not discover certain corporate self-dealing).

Green Tree argues that its injury, having a second lien position instead of a first lien, was inherently undiscoverable until U.S. Bank sought to enforce its alleged first lien interest in the property on August 15, 2013. (ECF No. 1).  The Court disagrees.

Green Tree (or its predecessor in interest) could have verified with Country Title, the closing agent, that Homecomings accepted payment on the note.  Alternatively, a simple review of the real property records would have revealed that U.S. Bank had not released the lien on the property. "As a general category, information contained in public records can be ascertained through reasonable diligence and thus is not inherently undiscoverable." *See Swanson v. Stouffer & Associates, LLP*, No. 03-12-00071-CV, 2014 WL 2522145, at *4 (Tex. App. May 30, 2014)

(citing *Sherman v. Sipper,* 152 S.W.2d 319, 321 (Tex. 1941).  It is undisputed that U.S. Bank's lien was of record at the time Green Tree originated its loan and recorded its deed of trust against the property.  U.S. Bank's deed of trust has remained in the Harris County real property records since it was recorded in 1999.  Accordingly, the discovery rule does not apply.

### (iii) The Counterclaim Savings Clause: Section 16.069

Section 16.069 of Texas Civil Practice and Remedies Code, which saves certain counterclaims from the statute of limitations, applies to this case.  Section 16.069 provides:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

Tex. Civ. Prac. & Rem. Code Ann. § 16.069 (West).

"Where the requirements of the statute are met, section 16.069 allows those who are already parties to the action to assert claims against one another that would otherwise be time-barred." *Ellard v. Ellard*, 441 S.W.3d 780, 782 (Tex. App. 2014) (quoting *J.M.K. 6, Inc. v. Gregg & Gregg, P.C.,* 192 S.W.3d 189, 199 (Tex. App.-Houston [14th Dist.] 2006, no pet.)).

There is a threshold question of whether the thirty day requirement set forth in § 16.069(b) is satisfied.  On December 20, 2013, U.S. Bank filed its Amended Complaint that added Green Tree as a named defendant.  (ECF No. 18).  On January 20, 2014, Green Tree timely filed its first answer to the complaint, but the original answer did not assert any counterclaims. (ECF No. 23).  On May 22, 2014, Green Tree and BONY filed an amended motion for leave to file an amended answer and brief. (ECF No. 30).  On June 18, 2014, the

Court granted Green Tree's motion for leave to file an amended answer.  (ECF No. 37).  On July 10, 2014, Green Tree filed its counterclaims against U.S. Bank.  (ECF No. 42).

The question is whether Green Tree's counterclaims relate back to its original answer to satisfy the thirty day requirement set out under section 16.069(b).  The Court holds that it does.

Rule 15 of the Federal Rules of Civil Procedure state that:

> [a]n amendment to a pleading relates back to the date of the original pleading when.. (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or…

Fed. R. Civ. P. 15(c)(1).

The Fifth Circuit has held that relation back under rule 15(c) is a procedural law and therefore applies in federal court.  *See Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987) ("Rule 15(c) is a truly procedural rule because it governs the in-court dispute resolution processes rather than the dispute that brought the parties into court… Therefore, we conclude that Rule 15(c), the federal relation back rule, applies and the district court erred in applying the Texas relation back rule."); s*ee also Welch v. Louisiana Power & Light Co.*, 466 F. 2d 1344, 1345 (5th Cir. 1972) ("This Court has held that amendment to pleadings is a procedural matter to be governed by federal law.").

Under Rule 15(c), an amendment to a pleading relates back to the date of the original pleading in two circumstances potentially applicable here.  First, an amendment relates back if "the law that provides the applicable statute of limitations" permits it. Fed. R. Civ. P. 15(c)(1) (A).  The second way in which Rule 15(c) relation-back might apply occurs when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  The

Advisory Committee Notes under Rule 15 state that "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." Fed. R. Civ. P. 15 (Advisory Committee's Note).  Accordingly, the Texas relation back rule applies if it is more forgiving than the federal relation back rule.  Indeed, the Fifth Circuit and the Southern District of Texas have interpreted this to mean that relation back is determined by whichever is more forgiving between state law or federal law. *See Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901 (5th Cir. 2012) ("The consequence of Rule 15(c)(1)(A) is that a claim will be deemed to "relate back" if relation back is permitted under state law, even if it is not permitted under federal law."); *see Quantlab Technologies Ltd. (BGI) v. Godlevsky*, No. CIV.A. H-9-4039, 2012 WL 1596710, at *3 (S.D. Tex. May 4, 2012) ("This Court has held that relation back is determined by whichever is more forgiving between state law or federal law.").

The Court first considers whether relation back would be allowed under Texas law. Section 16.068 of the Texas Civil Practice and Remedies Code provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West).

Texas Courts have used section 16.068 and section 16.069 in conjunction to allow an amended counterclaim to relate back to the original counterclaim and thus fall within the counterclaim savings clause.  *See, e.g.*, *E.P. Operating Co. v. Sonora Exploration Corp.*, 862 S.W.2d 149, 152 (Tex. App.- Houston [1st Dist.] 1993, writ denied) ("a counterclaim … timely filed under § 16.069 may be amended pursuant to § 16.068 provided the facts or grounds of

liability asserted in the amendment are based on the same transaction or occurrence."); *see also Southern Region, Inc. v. Marshall*, 787 S.W.2d 471, 473 (Tex. App.-Houston [14th Dist.] 1990, no writ)(sections 16.068 and 16.069 combine to "make [an] amended counterclaim relate back to the date of the original filing of the counterclaim and thus avoid the running of limitations."). However, in this case, sections 16.068 and 16.069 do not operate to save Green Tree's counterclaim because "Texas law does not permit relation back of a counterclaim when, as here, the defendant's original answer was merely a defensive pleading and did not contain a counterclaim or independent grounds for a cause of action." *Steadfast Ins. Co. v. SMX 98, Inc.*, No. CIV.A. H-06-2736, 2009 WL 890398, at *17 (S.D. Tex. Mar. 30, 2009) (citing *Flukinger v. Straughan*, 795 S.W.2d 779, 787 (Tex. App. 1990).

Green Tree's initial answer did not contain a counterclaim or any independent grounds for a cause of action against U.S. Bank. Accordingly, Green Tree's amended counterclaims do not relate back to the original answer under section 16.068.

However, Green Tree's counterclaims do relate back to its original answer under the federal standard set out in Rule 15(c)(1)(B).

"The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 159 n. 3, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984). In deciding whether an amended pleading relates back to the original pleading, "the linchpin is notice, and notice within the limitations period." *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H-06-2736, 2009 WL 890398, at *18 (S.D. Tex. Mar. 30, 2009) (quoting *Texas Clinical Labs, Inc. v. Leavitt,* 535 F.3d 397, 406 n. 19 (5th Cir. 2008)).

In applying Rule 15(c) to a counterclaim, courts examine whether there is "a common core of operative facts in the two pleadings" and "'whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds.'" *Cornerstone Systems, Inc. v. Knichel Logistics, L.P.,* No. 2:03cv584, 2006 WL 2471531, at *14 (W. D. Pa. Aug. 24, 2006) (quoting *USX Corp. v. Barnhart,* 395 F.3d 161, 167 (3d Cir. 2004)). "So long as [a] counter-defendant had adequate notice of the transactions forming the basis for the amended claim, relation back is appropriate." *Nordco, A.S. v. Ledes,* No. 95 Civ. 7753, 1999 WL 1243883, at *7 (S.D.N.Y. Dec. 21, 1999). Because "an answer without counterclaims typically does not provide much 'notice' of anything, other than the defendant's general denial of the plaintiff's allegations," in such a circumstance the inquiry is not narrowly focused on the content of the original pleading, "but on the broader, more fundamental question of whether defendants were aware that the matters giving rise to the counterclaims would be at issue in [the] litigation." *Rubin v. Valicenti Advisory Services, Inc.,* 471 F. Supp. 2d 329, 336 (W.D.N.Y. 2007).

In *Steadfast*, the district court held that a defendant's counterclaims for deceptive insurance practices related back to the original answer, even though defendant's original answer did not (i) assert any counterclaims or (ii) expressly allege any misrepresentations. *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H-06-2736, 2009 WL 890398, at *19 (S.D. Tex. Mar. 30, 2009). The court reasoned that because the original answer made it clear that defendant disputed plaintiff's interpretation of the insurance policy, "[plaintiff] could reasonably have expected that [defendant] would use [plaintiff's] demand for payment as the basis to counterclaims for violations of the DTPA and the Texas Insurance Code." (*Id.*).

In its original answer, Green Tree denies several allegations posited by U.S. Bank. (ECF No. 23).  In paragraph 25 of U.S. Bank's amended complaint, it claims that "the wire transfer was returned, apparently for failure to identify the proper account number… and because the funds were short of a full payoff." (ECF No. 18 at 6-7).  Green Tree denied this allegation in its original answer by stating "Green Tree has insufficient information to admit or deny the allegations in paragraph 25." Fed. R. Civ. P. 8(b)(5) ("A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.").  Green Tree's denial that the funds were short of a full payoff provides for the basis of each of its remaining counterclaims.

Indeed, Green Tree's claims for negligence and note discharged by tender of payment are premised on its allegation that U.S. Bank wrongfully refused to accept the funds from Country Title.  U.S. Bank could reasonably have expected that Green Tree would argue that U.S. Bank's wrongful refusal of tender of payment supports its counterclaims.  Accordingly, Green Tree's counterclaims relate back to its original answer under Rule 15(c)(1)(B) and therefore satisfies the thirty day requirement set out in section 16.069(b).

To utilize the counterclaim savings clause, Green Tree must also demonstrate that its remaining counterclaims "arise[] out of the same transaction or occurrence that is the basis of [the] action" brought by U.S. Bank.  The Court finds that Green Tree's counterclaims satisfy this requirement.

For the counterclaims to have arisen out of the same transaction or occurrence as required by section 16.069, the claims must have a logical relationship to the dispute that was involved in U.S. Bank's complaint.  *See Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App. 2000) (citing *Jack H. Brown & Co. v. Northwest Sign Co.,* 718 S.W.2d 397 (Tex. App.-Dallas

1986, writ ref'd n.r.e.) (construing the compulsory counterclaim rule). To be logically related, the essential facts on which the counterclaims are based should be significantly and logically relevant to both claims. (*Id.*). "Section 16.069(a) is intended to prevent a party from waiting until an opponent's valid claim, arising out of the same transaction or occurrence, is time-barred before asserting its own claim." *Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 545 (Tex. App. 2010).

In the context of considering whether the section 16.069 exception applies, Texas courts have construed the term "transaction" as flexible and involving a series of multiple occurrences logically related to one another. *See, e.g., Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.*, No. 04-09-00256-CV, 2010 WL 2679997, at *8 (Tex. App. July 7, 2010) ("Because we construe a "transaction" as flexible and involving a series of multiple occurrences logically related to one another, we conclude the Fallises' claims arise out of the same transaction as the Association's claim for declaratory relief.").

U.S. Bank's amended complaint asserts claims against Green Tree for (i) trespass to try title, (ii) determination of validity and priority of liens, (iii) objection to Green Tree's claim, (iv) declaratory judgment, and (v) equitable subrogation. (ECF No. 18). All five of U.S. Bank's asserted claims—trespass to try title, determination of validity and priority of liens, objection to Green Tree's claim, declaratory judgment, and equitable subrogation—are essentially an attempt to establish that "U.S. Bank's deed of trust is first in priority ahead of any valid mortgage or other lien on the property held by BONY or SLS." (ECF No. 18 at 9).

Green Tree's remaining counterclaims challenge U.S. Bank's assertion that its deed of trust is first in priority. Generally, where the subject matter of a defendant's counterclaim is defensive and attempts to negate plaintiff's right of recovery, the four year statute of limitation

does not run. *See Morales v. Martinez*, 545 S.W.2d 568, 570 (Tex. Civ. App. 1976) (citing *Preston v. Williams*, 427 S.W.2d 157, 160 (Tex. Civ. App. 1968) ("While the cases have not been uniform, it seems clear that where the subject matter of a defendant's pleading is strictly by way of defense and operates merely as a negation of the plaintiff's right of recovery, the statute does not run. Being essentially defensive, it was not barred by the Statute of Limitations.").

Accordingly, the Court finds that section 16.069 prevents the statute of limitations from barring Green Tree's claims for negligence and discharge by tender of payment.

**Determination of the Validity and Priority Liens & Declaratory Judgment**

Finally, U.S. Bank asserts that Green Tree's requests for declaratory relief and determination of validity and priority of liens are barred by the statute of limitations.  (ECF No. 46 at 15).  Because Green Tree has sufficiently plead claims for negligence and discharge by tender of payment under Texas common law, the statute of limitations does not bar Green Tree's requests for declaratory judgment and determination of validity and priority of liens.

**Leave to Amend**

Green Tree has requested leave to amend its counterclaim to cure any pleading defects, including "clarification of Defendants' position that the tender of the Payoff discharged the Original Deed of Trust under Texas law." (ECF No. 44 at 28-29).

Green Tree's trespass to try title claim fails because it does not plead sufficient facts to support its claim.

Green Tree's "discharge by payment" claim under § 3.602 and § 3.603 of the Texas UCC fails because Chapter 3 of the UCC does not apply to mortgage notes secured solely by real property.

The Court has the discretion to deny Green Tree's motion for leave to amend if it is futile. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.  While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted." ) (internal citations omitted).  Further pleading on these issues would be futile.  Accordingly, Green Tree's motion for leave to amend its claims for trespass to try title and claim for discharge by payment under the UCC is denied.

SIGNED **January 13, 2015.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE